IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

ANGELA RAE SPENCER,

      Plaintiff,

v.                                        No. CIV-O2-1235 BB/WWD

ALBUQUERQUE POLICE DEPARTMENT,
OFFICERS D. HUBBARD and MONTOYA acting
in their individual capacity and official capacity as
police officers for the ALBUQUERQUE POLICE
DEPARTMENT, in the State of New Mexico,
MELISSA LISTEK and LEROY ULIBARRI
acting in their individual and professional capacity
as agents for TIERRA POINTE APARTMENTS,
in the State of New Mexico

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for consideration of Defendants the Albuquerque Police Department, Officer David Hubbard and Officer James Montoya's Motion for Summary Judgment, filed September 30, 2003 (Doc. 34). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motion will be GRANTED in part, and DENIED in part.

### I. BACKGROUND

This case arises from an altercation between Defendants Officer David Hubbard and Officer James Montoya of Defendant the Albuquerque Police Department (collectively the "City Defendants") and Plaintiff Angela Rae Spencer ("Spencer"). On September 3, 2002, Officer Hubbard and Officer Montoya obtained a key to Spencer's apartment, unlocked and opened the

apartment door and arrested Spencer for harboring a felon.  Subsequently, Plaintiff brought this suit alleging that Defendants violated her Fourth Amendment rights by entering her apartment, improperly arrested her in retaliation for asserting her rights, arrested her without probable cause, interfered with her right to familial association, and committed several torts arising under New Mexico law.

Prior to the events at issue in this case, a confidential informant advised Officer Montoya that a man named Terry Wilson ("Wilson") was selling "crack cocaine" at an Albuquerque truck stop.  The informant also provided a license plate number for a vehicle registered to Spencer that he claimed was driven by Wilson.  Based on this tip, Officer Montoya performed a follow-up investigation and learned of the existence of an out-of-state felony arrest warrant for Wilson for a parole violation on charges related to drug trafficking.  An NCIC check verified that there was a valid outstanding arrest warrant for Wilson from the State of Michigan.

On September 3, 2002, Officer Montoya and Officer Hubbard obtained a copy of the NCIC teletype with Wilson's arrest information, and proceeded to Spencer's apartment in the Tierra Pointe Apartments to locate Wilson.  At the apartment complex the officers contacted a maintenance man who described Wilson, and informed them that Wilson was in Spencer's apartment.  Upon reaching Spencer's apartment, the officers initially attempted to deceive Spencer by telling her that they were maintenance.

The specifics of the events that followed are in dispute, but it is unchallenged that after this approach failed, Officer Montoya and Officer Hubbard identified themselves as police officers, and instructed Spencer to open the door because they had an arrest warrant for a felon they believed was inside her apartment.  Spencer refused to permit the officers in her home, and a

brief standoff ensued.  The standoff was resolved when Officer Montoya and Officer Hubbard acted upon a radio instruction given by their superior, and obtained a key from the apartment complex manager.  Officer Hubbard used the key to unlock and open the front door to Spencer's apartment.

Eventually, Wilson was discovered in Spencer's apartment.  Officer Montoya and Officer Hubbard arrested Wilson, and also arrested Spencer for harboring a felon.  After arresting Spencer, Officer Hubbard and Officer Montoya entered Spencer's apartment and performed a search.  The extent of the search is contested, but it is undisputed that at a minimum the officers entered Spencer's apartment to perform a brief protective sweep.

After she was arrested, but before she was transported to the police station, Spencer informed Officer Hubbard and Officer Montoya that she had two minor children who would be returning home from school.  She further advised the officers that she had a 20 year old stepson who could care for her children, but this individual was never contacted.  Instead, Officer Hubbard contacted the Children, Youth and Families Department ("CYFD").  Spencer's children were taken into the care of CYFD that afternoon, and returned to Spencer the next day.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999).  However, it is

"not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988). Summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F. 3d 1316, 1319 (10th Cir. 1997). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*.

### III. DISCUSSION

In her pro se Complaint, as clarified by the Initial Pre-Trial Report, Spencer brought the following claims against the City Defendants: (1) unreasonable search in violation of the Fourth Amendment; (2) retaliatory arrest for the exercise of her Fourth Amendment rights; (3) interference with her Fourteenth Amendment right of familial association; (4) arrest without probable cause; (5) false arrest; (6) assault; (7) intentional infliction of emotional distress; and (8) intimidation. The City Defendants argue that they are entitled to summary judgment on all of these claims. As discussed below, the Court grants summary judgment on the arrest without probable cause, false arrest, assault, intentional infliction of emotional distress and intimidation claims; but denies summary judgment on the unreasonable search, retaliatory arrest and interference with familial relations claims.

**A. Defendant the Albuquerque Police Department**

As an initial matter, the City Defendants note that a police department is not a legal entity which may be held liable apart from a municipal corporation. *See, e.g., Ketchum v. Albuquerque*

*Police Dept.*, 1992 WL 51481 (10th Cir. 1992) (unpublished). The City Defendants argue that for this reason, Defendant the Albuquerque Police Department should be dismissed as a party to this matter. In her Response, Spencer does not dispute or address this matter. Accordingly, the Albuquerque Police Department is hereby dismissed.

**B. Qualified Immunity**

Plaintiff has brought this action against Officer Montoya and Officer Hubbard in both their individual and official capacities. With regard to the claims against them in their individual capacities, Officer Hubbard and Officer Montoya assert that they are entitled to qualified immunity. *See Medina v. City and County of Denver*, 960 F.2d 1493, 1499 (10th Cir. 1992) (qualified immunity does not protect defendants sued in their official capacities). Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Summary judgment motions involving the defense of qualified immunity are treated differently than typical summary judgment motions. *See Hannula v. City of Lakewood*, 907 F.2d 129, 130 (10th Cir. 1990). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a two-part test. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). The plaintiff must first establish "that the defendant's actions violated a constitutional or statutory right." *Id*. If the plaintiff establishes a violation of a constitutional or statutory right, she must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id*. In determining whether the right was "clearly established," the

Court considers the objective reasonableness of the action and determines whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). If the plaintiff fails to satisfy either part of the two-part inquiry, the Court must grant the defendant qualified immunity. On the other hand, if the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant to prove "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Albright*, 51 F.3d at 1535 (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993)). Although the evidence is reviewed in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied her two-part burden. *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001).

Officer Hubbard and Officer Montoya argue that they are entitled to summary judgment on all of Spencer's constitutional claims, including her claims of an illegal search, retaliation, interference with her right to familial association, and arrest without probable cause. As discussed below, the Court finds that Officer Hubbard and Officer Montoya are not entitled to qualified immunity on the claims of an illegal search, retaliation, and interference with familial association, but are entitled to qualified immunity on Spencer's claim of an arrest without probable cause.

**1. Officer Hubbard and Officer Montoya are not entitled to qualified immunity on Spencer's illegal search claim.**

Spencer claims that Officer Hubbard and Officer Montoya violated her Fourth Amendment right to be free from unreasonable searches. In order to determine whether Officer Hubbard and Officer Montoya are entitled to qualified immunity, the Court must engage in the two-part inquiry to determine if (1) Officer Hubbard and Officer Montoya violated a

constitutional right, and (2) if that right was clearly established on September 3, 2002. *See Albright*, 51 F.3d at 1534. In cases involving alleged Fourth Amendment violations, the United States Supreme Court has instructed that the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Liability is premised upon what a "reasonably well-trained officer" would know. *Id*. at 345. The state of the law must be such "that a reasonable official would understand that what he is doing violates" the law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Spencer claims that Officer Hubbard and Officer Montoya violated her Fourth Amendment rights when they searched her home without a warrant, without consent, and without exigent circumstances. *See U.S. v. Anderson*, 981 F.2d 1560, 1567-68 (10th Cir. 1992). In *Steagald v. United States*, 451 U.S. 204 (1981), the Supreme Court considered whether an arrest warrant also carried with it the authority to enter the dwelling, not of the suspect, but of a third party not named in the warrant. The Court held that, absent exigent circumstances or consent, the search of a third party's home without a search warrant for the purpose of apprehending the subject of a valid arrest warrant violates the right of that third party to be free from unreasonable searches. *Id*. at 213-214. Otherwise, "[a]rmed only with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances." *Id*. at 215.

The present matter is plainly governed by *Steagald*. It is undisputed that Officer Hubbard and Officer Montoya had a valid arrest warrant for Wilson. Likewise, it is also undisputed that when Spencer expressly refused to open the door and denied consent to enter her apartment, Officer Hubbard and Officer Montoya acted upon a radio instruction and obtained a key from the

7

apartment manager.[1] The officers then used the key to unlock and open the front door to Spencer's home. To be clear, this is not a case in which the police considered Wilson to be a co-resident of Spencer. *See United States v. Risse*, 83 F.3d 212 (8th Cir. 1996). There is no evidence in the record that Officer Hubbard and Officer Montoya believed that Spencer's apartment was Wilson's residence, and Defendants do not make this claim. Rather, the evidence suggests that Officer Hubbard and Officer Montoya were operating under the mistaken belief that a valid arrest warrant for Wilson authorized them to enter the residence of a third party. For example, the following exchange occurred during Officer Hubbard's deposition:

> A. (Officer Hubbard) The important issue for us is that a warrant is confirmed, that we know the subject [is] inside the apartment. On an arrest warrant, we can go in and get him.
>
> Q. (Joseph Kennedy) So on an arrest warrant, you can go in and get a person in an apartment even if he is a guest?
>
> A. Yes. If he has a confirmed arrest warrant, yes.
>
> Q. And that is your training from the City of Albuquerque?
>
> A. Uh-huh.
>
> Q. Yes?
>
> A. Yes.
>
> Q. Okay. So I mean for instance, if I have a friend over for dinner and he has got an arrest warrant, APD can come into my home and arrest my friend?

---

[1] The City Defendants do not argue that they acted upon the consent of a person with the authority to permit a search of the premises. *Compare Chapman v. U.S.*, 365 U.S. 610, 615-17 (1961) (owner of a rented or leased premises lacks authority to consent to a search of the premises), *and U.S. v. Owens*, 782 F.2d 146 (10th Cir. 1986) (owner of a hotel or motel lacks authority to consent to a search of a suspect's room), *with U.S. v. Allen*, 235 F.3d 482, 490 (10th Cir. 2000) (district court's finding of consent upheld where defendant did not argue that the apartment manager lacked the authority to open apartment).

    A. If we are positive that he is in there, yes.

    Q. Right.  If you're positive that he is in there, yes?

    A. Uh-huh.

    Q. Is that a yes?

    A. Yes.

    Q. Even though you know that he is simply a guest in my home; is that true?

    A. Yes.

Def. Mot. S.J., ex. B at 12-13 (filed Sept. 30, 2003).

    Officer Hubbard and Officer Montoya do not claim that they acted under exigent circumstances, and they did not obtain a search warrant.  These facts, if proven at trial, amount to a violation of *Steagald* and its progeny.  *See United States v. McIntosh*, 857 F.2d 466 (8th Cir. 1988).  A reasonable police officer would be aware of the teachings of *Steagald*, and would have understood that absent a search warrant or exigent circumstances, an arrest warrant for Wilson did not authorize the entrance into Spencer's home.  *See Malley*, 475 U.S. at 345.

    In their brief, the City Defendants imply that the officers' actions in opening Spencer's door were constitutional because they had probable cause to arrest Spencer. This implication mischaracterizes the law.  In *Payton v. New York*, 445 U.S. 573 (1980), the Supreme Court considered a case in which the police lacked a warrant, but entered the defendant's home and arrested him based on probable cause.  The Court held that, probable cause notwithstanding, absent exigent circumstances or consent, the Fourth Amendment prohibits police officers from making a warrantless entry into the home of a suspect for the purpose of arresting him.  *Id*. at 213-14.

9

The Supreme Court issued *Payton* and *Steagald* over twenty (20) years ago. It follows that the rights annunciated by these cases were clearly established on September 3, 2003. In sum, the facts asserted by Spencer are sufficiently supported by evidence in the record to survive summary judgment. Therefore, Officer Hubbard and Officer Montoya are not entitled to qualified immunity on Spencer's illegal search claim.

**2. Officer Hubbard and Officer Montoya are not entitled to qualified immunity on Spencer's retaliation claim.**

Next, Officer Hubbard and Officer Montoya claim that they are entitled to qualified immunity on Spencer's claim that her arrest violated the constitution because it was in retaliation for her exercise of her Fourth Amendment rights.

In 1990 the Tenth Circuit held that "'[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.'" *DeLoach v Bevers*, 922 F.2d 618, 621 (10th Cir. 1990) (quoting *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)). Based on this reasoning, the *DeLoach* court sustained a jury verdict because it found sufficient evidence from which a reasonable jury could conclude that the defendant police officer arrested plaintiff in retaliation for her decision to hire an attorney. *Id*.

According to Spencer's version of the facts, Officer Hubbard and Officer Montoya arrested Spencer in retaliation for refusing to permit them to enter her house to search for Wilson. Spencer's pro se Complaint contains several explicit claims that Officer Hubbard and Officer Montoya made statements to the effect that Spencer was being arrested for exercising her Fourth Amendment rights. *See* Pls. Resp., ex. A, ¶ 4 (filed Oct. 30, 2003); Pls. Comp. at ¶¶ 29-31, 34-35

10

(filed Oct. 2, 2002).[2] For example, Spencer claims that one of the officers responded to an inquiry as to why she was being arrested with "because you didn't open the door when we told to, [sic] you are being arrested for harboring a fugitive." Pls. Resp., ex. A, ¶; Pls. Comp. at ¶ 30.

Although the City Defendants dispute this version of the facts, the facts asserted by Spencer, if proven, are sufficient to demonstrate a clearly established right. Spencer has presented enough evidence to raise a genuine, material factual issue concerning whether the City Defendants' conduct violated that right.

### 3. Officer Hubbard and Officer Montoya are not entitled to qualified immunity on Spencer's claim of interference with familial relations.

Third, Officer Hubbard and Officer Montoya seek qualified immunity from Spencer's claim of interference with her Fourteenth Amendment right to familial association.

In *Malik v. Arapahoe County Department of Social Services*, 191 F.3d 1306 (10th Cir. 1999), the Tenth Circuit found "it was clearly established law that, except in extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures." *Id*. at 1315. In *Malik* a social worker and a police officer were denied qualified immunity because they used misrepresentation to

---

[2] A district court has discretion to treat a complaint "as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)." *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988). According to Rule 56(e), an affidavit must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). In her affidavit, Spencer states that she personally drafted the Complaint, and that "[a]ll facts alleged in the complaint are base [sic] upon personal knowledge and are true and correct to the best of my knowledge" Pls. Resp., ex. A, ¶ 4. Through Spencer's affidavit, the requirements of Rule 56(e) are met with regard to the Complaint. For this reason, the Court views Spencer's Complaint as a verified complaint, and will treat it as an affidavit for the purposes of summary judgment.

separate a child and parent in retaliation for the parent's exercise of her constitutional rights. *Id.* at 1316. Similarly, in *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990), the court found that social workers were not entitled to qualified immunity because they had separated a child and parent through intentionally false allegations of sexual abuse. *Id.* at 697-98.

In the present matter, Spencer bases her claim of interference with familial association on three factual contentions: (1) Officer Hubbard and Officer Montoya had her children placed in custody of CYFD in retaliation for her exercise of her Fourth Amendment rights, *see* Pls. Resp., ex. A, ¶; Pls. Comp. at ¶¶ 32-35; (2) Officer Hubbard and Officer Montoya refused to place her children with a 20 year-old relative in retaliation for her exercise of her Fourth Amendment rights, *id.*; and (3) Officer Hubbard falsely informed CYFD that Spencer was selling crack so that CYFD would assume custody of her children, Pls. Resp., ex. A, ¶, D; Pls. Comp. at ¶¶ 48-49. Like the defendants in *Malik* and *Snell*, Officer Hubbard and Officer Montoya are accused of intentionally using deceit and misrepresentation to separate a child and a parent. Similarly, like the plaintiff in *Malik*, Spencer claims that she was kept from her children in retaliation for exercising her constitutional rights. It is not necessary for the factual situations to be identical for a court to find that a clearly established right was violated. "[P]recise factual correlation between the then-existing law and the case at-hand is not required; thus, a then-existing case 'on all fours' with the case at hand is not essential. While government officials are not required to anticipate developments in the law, they are expected 'to relate established law to analogous factual settings,' and 'apply general, well developed legal principles.'" *Snell*, 920 F.2d at 699 (internal quotations and citations omitted). When the evidence is viewed in the light most favorable to Spencer, Officer Hubbard and Officer Montoya's actions make out violations of the law clearly

established by *Malik* and *Snell*. Individual defendants are not immune from suit if it is determined that they deliberately misrepresented facts or retaliated against a plaintiff for exercising her rights. This factual dispute mandates the denial of summary judgment on Spencer's claim of interference with her familial relations.

### 4. Officer Hubbard and Officer Montoya are entitled to qualified immunity on Spencer's claim of an arrest without probable cause.

Last, Officer Hubbard and Officer Montoya assert that they are entitled to qualified immunity on Spencer's claim of an arrest without probable cause.

Spencer claims that her arrest for harboring a felon was not supported by probable cause. Probable cause requires a "substantial probability that a crime has been committed and that a specific individual committed a crime." *St. John v. Justman*, 771 F.2d 445, 448 (10th Cir. 1985). As discussed, in a Fourth Amendment case, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violated the law." *Malley*, 475 U.S. at 341. The status of the law must be such that "a reasonable official would understand that what he is doing violates" the law. *Anderson*, 483 U.S. at 640.

In the present matter, it is undisputed that a maintenance man at the apartment complex identified Wilson and indicated that he was in Spencer's apartment. It is likewise undisputed that Officer Hubbard and Officer Montoya eventually identified themselves as police officers. Although there is a dispute over the name of the person that Officer Hubbard and Officer Montoya identified, it is uncontested that the police informed Spencer that they had a felony warrant for an individual that they believed was located in her apartment. Moreover, there is no

13

evidence in the record to directly contradict the City Defendants' assertion that they witnessed Spencer motioning for someone in her apartment to stay hidden.

Spencer makes three arguments in support of her claim that she was arrested without probable cause. First, she argues that Officer Hubbard and Officer Montoya lacked probable cause because the arrest was based on Spencer's exercise of her constitutional rights. As discussed above, there is sufficient evidence on this issue to survive summary judgment. This argument, however, does not specifically address probable cause. Rather, it merely duplicates the argument made in Spencer's retaliation claim.

Next, Spencer contends that the arrest lacked probable cause because Spencer had no reason to believe that Wilson was a felon or that there was a felony warrant issued in Wilson's name. *See* Pls. Resp., ex. A at ¶ 8, D; Pls. Comp. at ¶¶ 7-10, 15. This argument is inapposite. Whether Spencer had reason to believe that Wilson was a felon is a question that addresses the elements of the crime of harboring a fugitive. It is not relevant to the question of whether Officer Hubbard and Officer Montoya had probable cause to arrest Spencer.

Third, Spencer alleges that her arrest for harboring a felon lacked probable cause because Officer Hubbard and Officer Montoya were aware that Spencer and Wilson were married, and the criminal statute was, therefore, inapplicable. In support of this contention Spencer asserts that Wilson informed Officer Hubbard and Officer Montoya that Spencer was his wife. Pls. Resp., ex. A at ¶ 16. However, statements from a suspect do not vitiate probable cause. It is not uncommon for a suspect to give conflicting or inaccurate information to an arresting officer in order to exculpate themselves. A reasonable officer is entitled to be skeptical about statements from a suspect, and probable cause is typically unaffected. *C.f. Holland ex rel. Overdorff v.*

*Harrington*, 268 F.3d 1179, 1188 (10th Cir. 2001) (officer's conduct assessed from the perspective of a reasonable officer on the scene).

The burden is on Spencer to articulate a "clearly established" violation of a constitutional right. *Albright,* 51 F.3d at 1534.  In the present matter this requires Spencer to show that a reasonable police officer would understand that Officer Hubbard and Officer Montoya arrested Spencer without probable cause.  Even when viewing the facts in the light most favorable to Spencer, she has failed to meet this burden.  Moreover, the Supreme Court has recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable."  *Anderson*, 483 U.S. at 641.  Thus, even if Spencer is correct, and Officer Hubbard and Officer Montoya arrested her without probable cause, she has not met her burden for the purposes of qualified immunity.  For these reasons, Officer Hubbard and Officer Montoya are entitled to summary judgment on Spencer's claim of an arrest without probable cause.

**B.  Claims under the New Mexico Tort Claims Act**

Finally, for a variety of reasons, the City Defendants argue that they are entitled to summary judgment on Spencer's claims of false arrest, assault, intentional infliction of emotional distress and intimidation arising under the New Mexico Tort Claims Act.  Spencer has failed to respond in any fashion to this portion of the City Defendants' motion.  Furthermore, the Pre-Trial Order does not articulate any real factual or legal issues related to these claims.  Therefore, the Court deems these claims to be abandoned.  *See Artes-Roy v. City of Aspen*, 31 F.3d 958, 960 n. 1 (10th Cir. 1994); *Hinsdale v. City of Liberal, Kansas*, 19 Fed. Appx. 749, 769, 2001 WL

15

980781 at 17 (10th Cir. 2001) (unpublished).  Accordingly, summary judgment is granted on Spencer's claims of false arrest, assault, intentional infliction of emotional distress and intimidation.

### IV.  CONCLUSION

For the reasons set forth above, the Court finds that summary judgment be granted in part and denied in part.

### V.  ORDER

**IT IS ORDERED** that Defendants' Motion for summary judgment be DENIED as to Spencer's unreasonable search, retaliatory arrest and interference with familial relations claims.  It is further ordered that summary judgment be GRANTED for the arrest without probable cause, false arrest, assault, intentional infliction of emotional distress and intimidation claims.

**DATED** at Albuquerque this 30th day of March, 2004.

_____<br>
BRUCE D. BLACK<br>
United States District Judge

**Attorneys:**

For Plaintiff:

    Joseph P. Kennedy
    Shannon L. Oliver
    Kennedy & Oliver, P.C.
    1000 Second Street NW
    Albuquerque, NM 87102

For Defendants:

    Kathryn Levy
    Deputy City Attorney
    P.O. Box 2248
    Albuquerque, NM 87103